UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RUSSELL RAMEAL HARRIS,

                        Plaintiff,

                                                            3:22-CV-0977
v.                                                          (BKS/ML)

BINGHAMTON POLICE DEPARTMENT and
BRIAN SOSTOWSKI,

                        Defendants.

_____

APPEARANCES:                                OF COUNSEL:

RUSSELL RAMEAL HARRIS
*Pro se*
Bare Hill Correctional Facility
Caller Box 20
Malone, New York 12953


MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with (1) an *in forma pauperis* application, (2) a motion to appoint counsel, and (3) an amended motion to appoint counsel to the Court for review.  (Dkt. Nos. 1, 2, 3, 7.)  For the reasons discussed below, I (1) deny Plaintiff's *in forma pauperis* application, (2) deny Plaintiff's motions to appoint counsel, and (3) recommend that the Complaint be dismissed in its entirety with leave to amend.  (Dkt. Nos. 1, 2, 3, 7.)

I.      **BACKGROUND**

As Plaintiff is proceeding *pro se*, the undersigned has liberally construed the Complaint, interpreting the strongest arguments possible based on the facts alleged therein.  *See Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (citations omitted).  The Complaint is on a United States District Court for the Northern District of New York form civil complaint.  (*See generally* Dkt. No. 1.)  Plaintiff handwrote his responses on the form and included twelve additional handwritten pages (and six pages of apparent exhibits).  (*Id.*)  Plaintiff's handwriting is difficult to read, and the Court is therefore unable to discern fully Plaintiff's allegations and the claims he seeks to assert.

To the extent that the Court can decipher Plaintiff's handwriting, he appears to allege generally that Defendants Binghamton Police Department ("Defendant BPD") and BPD Investigator Brian Sostowski ("Defendant Sostowski") (collectively "Defendants") violated his constitutional rights.  (*Id.*)

More specifically, Plaintiff alleges that on July 29, 2021, an "alleged victim" (Ryan Milazzo) contacted Defendant BPD regarding an incident involving Plaintiff.  (Dkt. No. 1 at 12.) Plaintiff alleges that an employee of Defendant BPD obtained a witness statement from Mr. Milazzo, a copy of which, Plaintiff affixed to the Complaint.  (*Id.* at 17-18.)  In sum, the witness statement alleges that on July 29, 2021, at approximately 12:45 a.m., Plaintiff entered Mr. Milazzo's residence uninvited, demanded Mr. Milazzo's phone, punched Mr. Milazzo in the face, hit Mr. Milazzo multiple times, took Mr. Milazzo's phone, threatened to strike Mr. Milazzo with brass knuckles, and left Mr. Milazzo's residence.  (*Id.*)  The witness statement alleges that Mr. Milazzo was familiar with Plaintiff because they were housed in the Broome County Jail H-pod together for approximately one month.  (*Id.*)

Attached to the Complaint is also an investigative summary that was purportedly prepared by Defendant Sostowski which states that on July 29, 2021, Defendant Sostowski was dispatched to patrol, he printed out a picture of Plaintiff, showed it to Mr. Milazzo, who identified the individual in the picture as Plaintiff.  (*Id*. at 21.)  The investigative summary further states that Defendant Sostowski directed another officer not to file charges or a warrant for Plaintiff yet, then Defendant Sostowksi created a "Wanted Flier" for Plaintiff and distributed it via e-mail to the other members of Defendant BPD.  (*Id*.)

Also attached to the Complaint is a document that appears to be on Defendant BPD's letterhead with the title "Wanted Person," Plaintiff's name, what appears to be a picture of Plaintiff, and *inter alia*, the words "probable cause to arrest . . . if located please take into custody and contact the detective bureau."  (*Id*. at 20.)

Finally, attached to the Complaint is a criminal complaint, dated August 2, 2021, signed by Investigator W. Balshuweit, charging Plaintiff with Burglary in the First Degree in violation of N.Y. Pen. L. § 140.30(3), a class B felony.  (Dkt. No. 1 at 22.)  Plaintiff alleges that on or about that same day, another officer employed by Defendant BPD contacted Plaintiff and informed him of a warrant for his arrest.  (*Id*. at 12.)  Plaintiff alleges that he "adhered to police commands" and was arrested "without incident."  (*Id.*)

The Complaint appears to assert five claims (1) a claim of malicious prosecution pursuant to the Fourth Amendment and 42 U.S.C. § 1983, (2) a claim that Plaintiff's rights to substantive due process were violated pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, (3) a claim that Defendants abused process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, (4) a claim of "supervisory liability," and (5) a claim of "municipal liability" pursuant to *Monell*.  (*Id.* at 4, 14.)

As relief, Plaintiff seeks compensatory damages in the amount of $100,000.00.  (*Id*. at 4.)

Plaintiff also filed an application to proceed *in forma pauperis*.  (Dkt. No. 2.)

## II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

A civil action is commenced in federal district court by filing a complaint.  Fed. R. Civ.

P. 3.  The statutory filing fee must be paid at the time an action is commenced unless the plaintiff

seeks IFP status.  28 U.S.C. §§ 1914(a), 1915(a).  Where a prisoner files an IFP application, Rule

5.1.4 of the Local Rules of Practice for the Northern District of New York requires that he also

submit a completed and signed inmate authorization form.  N.D.N.Y. L.R. 5.1.4(b)(1)(B).

The statute governing a prisoner's application to proceed IFP in federal court, 28 U.S.C.

§ 1915, provides, in pertinent part, that an IFP request must be accompanied by "a certified copy

of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month

period immediately preceding the filing of the complaint . . . , obtained from the appropriate

official of each prison at which the prisoner is or was confined."  28 U.S.C. § 1915(a)(2).  In

accordance with Rule 5.4 of the Local Rules of Practice for the Northern District of New York, a

prisoner seeking IFP status in a civil action may satisfy the statutory requirements by submitting

a completed, signed, and certified IFP application.  N.D.N.Y. L.R. 5.1.4(b)(1)(A).  A "certified"

IFP application is one on which the certificate portion at the bottom of the form has been

completed and signed by an appropriate official at the plaintiff's facility. The certificate portion

of the application requests information regarding funds and/or securities held on account to the

inmate's credit over the preceding six months.  Accordingly, inmates requesting IFP status may

either submit a completed, signed, and certified IFP application as provided in the Local Rules,

or they may submit certified copies of their account statements for the six-month period immediately preceding the filing of a complaint as set forth in 28 U.S.C. § 1915(a)(2).[1]

Upon review, the Court finds that plaintiff's IFP application is incomplete.  Plaintiff has neither submitted a certified copy of his trust fund account statement for the six-month period immediately preceding the filing of the complaint nor submitted a certified IFP application in accordance with the Court's Local Rules.  To do away with these requirements would disregard a requirement clearly set forth in an Act of Congress.  *See* 28 U.S.C. § 1915(a)(2) (providing that the prisoner "shall" submit the information in question).  In addition, Plaintiff has not submitted a completed and signed inmate authorization form in accordance with the Court's Local Rules.

As a result, Plaintiff's IFP application is incomplete and must be denied.  If Plaintiff wishes to renew his IFP application, he must, within thirty days of the Court's ruling on this Order and Report-Recommendation, submit either (1) the $402.00 filing fee in full, or (2) a completed, signed, and certified IFP application,[2] and a completed and signed inmate authorization form.  If Plaintiff fails to timely comply, I recommend that this action be dismissed without prejudice.

## III.  RELEVANT LEGAL STANDARD GOVERNING INTIAL REVIEW OF A COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to

---

[1]  Upon compliance with the filing fee requirements, the Court must also consider the plaintiff's request to proceed IFP in light of the "three strikes" provision of 28 U.S.C. § 1915(g) and, if appropriate, review the complaint in accordance with 28 U.S.C. § 1915(e) and/or 28 U.S.C. § 1915A.

[2]  As noted above, certified account statements may be submitted in lieu of the completed certificate portion of the IFP application.  28 U.S.C. § 1915(a)(2).

either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]"  28 U.S.C. § 1915(e); *see also* 28 U.S.C. 1915A(a) ("The court shall review . . . as soon as practicable . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that — . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]  Similarly, under 28 U.S.C. § 1915A, a court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curium) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim

---

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.*  Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Finally, a few words are appropriate regarding what documents are considered when the court reviews a complaint pursuant to 28 U.S.C. § 1915.  Generally, the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: "(1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the

complaint, and (4) public records." *Cain v. Rambert*, 13-CV-5807, 2014 WL 2440596, at *2 (E.D.N.Y. May 30, 2014) (citing *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records)).

## IV.   ANALYSIS

Having reviewed Plaintiff's Complaint, and construing the allegations liberally, I recommend that all causes of action be dismissed.[4]

### A.   Malicious Prosecution

To assert a malicious prosecution claim under the Fourth Amendment, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of N.Y.*, 612 F.3d 149, 160-161 (2d Cir. 2010).  Notably, "absent circumstances that raise doubt

---

[4]     As an initial matter, the Court also notes that "[a]lthough a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located."  *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.  Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).  Thus, Defendant BPD is not a proper party amenable to suit.  However, for the reasons set forth below, even construing Plaintiff's claims against Defendant BPD as against the City of Binghamton, I recommend dismissal of the Complaint.

as to the victim's veracity,' a victim's report of a crime is generally enough, by itself, to establish

probable cause." *Koester v. Lanfranchi*, 288 F. App'x 764, 766 (2d Cir. 2008) (quoting *Singer v.*

*Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

       With regard to the second element, "it must be alleged that the prosecution is at an end,

either by alleging that defendant was acquitted of the charge, or by alleging facts showing the

legal termination of the prosecution complained of, in favor of defendant, prior to the

commencement of the action." *Carpenter v. Nutter*, 127 Cal. 61, 63 (1899); *see also Wallace v.*

*Kato*, 549 U.S. 384, 392 (2007).  "Proceedings are 'terminated in favor of the accused' only

when their final disposition is such as to indicate the accused is not guilty." *DiBlasio v. City of*

*New York*, 102 F.3d 654, 658 (2d Cir. 1996); *see also Spak v. Phillips,* 857 F.3d 458, 462 (2d

Cir. 2017) ("A 'favorable termination' does not occur until the prosecution against the plaintiff

has 'conclusively' ended.").  A reversal of a criminal conviction and remand for a new trial does

not constitute such a termination. *DiBlasio*, 102 F.3d at 658 (citing *Russell v. Smith*, 68 F.3d 33,

36-37 (2d Cir. 1995)); *accord Poventud v. City of New York*, 750 F.3d 121, 130-31 (2d Cir.

2014) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000)) ("[U]nder the common law

any final termination of a criminal proceeding in favor of the accused, such that the proceeding

cannot be brought again, qualifies as a favorable termination for purposes of a malicious

prosecution action.").

       Here, Plaintiff fails to state a claim upon which relief may be granted because—based on

what the Court is able to decipher from Plaintiff's Complaint—he fails to allege that the

proceedings terminated in his favor.  (*See generally* Dkt. No. 1.)  As a result, I recommend that

Plaintiff's malicious prosecution claim be dismissed.  *See Robinson v. Wright*, 21-CV-1098,

2022 WL 2663369, at *4 (N.D.N.Y. July 11, 2022) (Lovric, M.J.) (recommending dismissal of

the plaintiff's malicious prosecution claim because the complaint failed to allege facts plausibly suggesting that he had "obtained a favorable termination of the underlying proceeding."), *report and recommendation adopted by*, 2022 WL 4356214 (N.D.N.Y. Sept. 19, 2022) (McAvoy, J.); *Johnson v. Bieling*, 20-CV-1124, 2021 WL 1841470, at *7 (N.D.N.Y. Jan. 6, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's malicious prosecution claim where he did not allege that his conviction had been overturned and finally disposed of such that the charges could not be brought against him again), *report and recommendation adopted by*, 2021 WL 1840591 (N.D.N.Y. May 7, 2021) (Suddaby, C.J.); *Giles v. Fitzgerald*, 20-CV-0980, 2020 WL 6287459, at *5 (N.D.N.Y. Oct. 27, 2020) (Lovric, M.J.) (recommending dismissal of the plaintiff's malicious prosecution claims because the underlying criminal proceeding had not conclusively ended and thus, the plaintiff did not—and could not—allege that the proceedings terminated in his favor), *report and recommendation adopted by*, 2021 WL 248048 (N.D.N.Y. Jan. 26, 2021) (D'Agostino, J.).[5]

### B.   Substantive Due Process – Deliberate Indifference

"[N]ot all wrongs perpetrated by a government actor violate due process." *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002). "[A] substantive due process claim 'must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Apatow v. Town of Stratford*, 21-CV-1692, 2023 WL 122038, at *5 (D. Conn. Jan. 6, 2023) (quoting *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005)). "Substantive due process is an outer limit on the legitimacy of governmental action . . . [and its] standards are violated only by conduct that is so outrageously arbitrary as to

---

[5]     In the alternative, I recommend dismissal of Plaintiff's malicious prosecution claim because probable cause existed for commencing the proceeding based on the witness statement of Ryan Milazzo, which was attached to the Complaint.  (Dkt. No. 1 at 17-18.)

constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

In addition, the Supreme Court has held that

> [w]here a particular amendment "provides an explicit textual source of constitutional protection" against a particular source of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, Plaintiff's claim of having been improperly arrested without probable cause is properly analyzed under the Fourth Amendment, rather than substantive due process. *See Brown v. City of New York*, 16-CV-1919, 2018 WL 3821620, at *12 (S.D.N.Y. Aug. 10, 2018) (finding that the plaintiffs' claim that Mr. Brown was "arrested and kept from his family as a result of [Detective] Cardona's alleged fabrication of charges is properly analyzed under the Fourth Amendment, rather than substantive due process."); *see also Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)) ("Substantive due process analysis is therefore inappropriate in this case . . . if [the] claim is 'covered by' the Fourth Amendment.").[6]

---

[6]     As discussed above in Part IV.A. of this Order and Report-Recommendation, I find that Plaintiff's Fourth Amendment malicious prosecution claim fails to state a claim upon which relief may be granted.  To the extent that Plaintiff's Complaint is construed as alleging a false arrest claim pursuant to the Fourth Amendment, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  Probable cause is a complete defense to false arrest. *Weyant*, 101 F.3d at 852.  It "exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995).  "[P]robable cause may be based solely on information received from an alleged victim or eyewitness, so long as there is no reason to doubt that

In any event, I recommend that Plaintiff's substantive due process claim be dismissed because Plaintiff does not allege facts plausibly suggesting that the actions of Defendants were so arbitrary and conscience-shocking that they violated his substantive due process rights.  I find that after obtaining the supporting deposition from Ryan Milazzo (Dkt. No. 1 at 17-18), it cannot be said that the arrest of Plaintiff "was without any reasonable justification in the service of a legitimate governmental objective." *Tenenbaum*, 193 F.3d at 600.

For each of these reasons, I recommend that Plaintiff's substantive due process claim be dismissed.

### C.   Abuse of Process

"In its broadest sense, abuse of process may be defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process." *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 400 (N.Y. 1975).  "The distinction between civil and criminal abuse of process is critical for section 1983 purposes." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  "In order to establish liability for malicious abuse of process under § 1983, a plaintiff must establish the

---

person's veracity." *Brown v. City of New York*, 2018 WL 3821620, at *7 (citing *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30 (E.D.N.Y. 2015) (dismissing false arrest claim upon finding of probable cause to arrest the plaintiff for endangering the welfare of a child based solely upon statements by the plaintiff's children describing the plaintiff throwing a child against the wall of a car, despite the plaintiff's claims of failure to investigate); *Slater v. Mackey*, 12-CV-4325, 2015 WL 6971793, at *12 (E.D.N.Y. Nov. 10, 2015) (dismissing false arrest claim upon finding of probable cause to arrest the plaintiff for assault on her child resulting in black eye and bruises to the child based upon a statement by the plaintiff's child, combined with corroborating evidence)).  The Complaint fails to allege facts plausibly suggesting that Defendants should have or did have any reason to doubt the credibility of the unequivocal accounts regarding the interaction between Plaintiff and Mr. Milazzo.  As a result, to the extent that Plaintiff's Complaint is construed as alleging a false arrest claim, I recommend that it be dismissed for failure to state a claim upon which relief may be granted because there was probable cause to arrest Plaintiff.

claim's elements under state law as well as the deprivation of a constitutional right." *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 446 (E.D.N.Y. 2012).  In New York, a plaintiff may assert an abuse-of-process claim against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003).

"The crux of a malicious abuse of process claim is the collateral objective element." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 616 (E.D.N.Y. 2017) (quoting *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011)).  "A 'collateral objective' is usually characterized by personal animus, and may include infliction of economic harm, extortion, blackmail [or] retribution." *Dash v. Montas*, 17-CV-0515, 2020 WL 1550708, at *10 (E.D.N.Y. Mar. 31, 2020) (citations omitted); *see also Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 448 (E.D.N.Y. Sept. 28, 2012) ("Typical scenarios in which courts in this circuit have sustained a claim of malicious abuse of process involve prosecutions for reasons wholly outside of the initial prosecution.").

"In evaluating this element, the Second Circuit expressly distinguishes between a 'malicious motive' and an 'improper purpose'; only the latter suffices to meet the 'collateral objective' prong of the abuse of process standard." *Hoffman*, 893 F. Supp. 2d at 448. "Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution.  Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).

Here, the Complaint fails to allege facts plausibly suggesting a collateral objective. Plaintiff fails to allege even in the most general terms that the judicial process was used to obtain a collateral objective and thus, also fails to articulate what, exactly, the alleged collateral objective was.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Having failed to provide more than a 'naked assertion[] devoid of further factual enhancement,' *Iqbal*, 556 U.S. at 678, Plaintiff fails to meet [his] burden under Rule 8 with regard to [his] abuse of process claim." *Burton v. Cnty. of Westchester*, 21-CV-1475, 2022 WL 2340478, at *6 (S.D.N.Y. June 29, 2022).

As a result, I recommend that Plaintiff's abuse of process claim be dismissed.  *See Burton*, 2022 WL 2340478, at *6 (citing *Lopez-Motherway v. City of Long Beach*, 20-CV-5652, 2021 WL 965158, at *4 (E.D.N.Y. Mar. 15, 2021) (dismissing claims for abuse of process under § 1983 where the "[p]laintiff has failed to allege a collateral objective"); *Hoffman*, 893 F. Supp. 2d at 449 (collecting cases to show that "the collateral objective requirement is not satisfied by actions taken in prosecuting a case, even if done with a vindictive or vicious motive in an effort to prevail in the prosecution")) (dismissing the plaintiff's abuse of process claim for failure to allege a collateral objective where it was merely alleged that the judicial process was used "to obtain a collateral objective . . . include[ing] punishing [ ] Plaintiff for no valid reason").

### D.     Supervisory Liability

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a section 1983 cause of action against an individual, a

plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Courts in this circuit routinely hold that "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Kinch v. Artuz*, 97-CV-2419, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Colon*, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Before deciding *Ashcroft v. Iqbal*, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel could be considered "personally involved" if

(1)    the defendant participated directly in the alleged constitutional violation;
(2)    the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
(3)    the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
(4)    the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
(5)    the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873 (citing *Wright*, 21 F.3d at 501 (additional citation omitted)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability.  Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'"  *Tangreti*, 983 F.3d at 618.  The Second Circuit explained that, "'the factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary.  The violation must be established against the supervisory official directly."  *Id.* (quoting *Iqbal*, 556 U.S. at 676).  "District courts discussing *Tangreti* agree that the decision invalidated the *Colon* test and mandates that a plaintiff must establish a violation against the supervisory official directly."  *Fabrizio v. Smith*, 20-CV-0011, 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) (Lovric, M.J.) (collecting cases), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021) (Suddaby, C.J.).

As an initial matter, it is unclear based on the legible allegations contained in the complaint who the "supervisory liability" claim is asserted against.  However, that is irrelevant because there is no constitutional claim solely for "supervisory liability" and, as set forth above, I recommend dismissal of Plaintiff's underlying constitutional claims for failure to state a claim upon which relief may be granted.  As a result, I recommend dismissal of Plaintiff's claim for "supervisory liability."

### E.    Municipal Liability

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United Sates, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A municipal entity may only be named as a defendant in certain circumstances.  In *Monell v.*

*Dept. of Soc. Servs.*, the Supreme Court of the United States set forth the limited circumstances

under which a municipality may be liable under Section 1983.  *See* 436 U.S. 658 (1978).  For

instance, a municipality may not be liable solely or vicariously because it employs a tortfeasor.

*See Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35 (2010).  Only when the municipality,

through the execution of its policies, actually deprives an individual of his constitutional rights,

may it be liable for damages.  *See Monell*, 436 U.S. at 694.

Under *Monell* and its progeny, a municipal liability claim requires showing that: "(1) the

actions were taken under the color of law, (2) there was a deprivation of a constitutional or

statutory right, (3) causation, (4) damage, and (5) that an official policy of the municipality

caused the constitutional injury." *Jackson v. City of Syracuse*, 20-CV-1215, 2021 WL 3710494,

at *6 (N.D.N.Y. Aug. 20, 2021) (Suddaby, C.J.) (citing *Roe v. City of Waterbury*, 542 F.3d 31,

36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91)); *see also Pembaur v. City of Cincinnati*,

475 U.S. 469, 478-479 (1986).  An "official policy" includes the decision and acts of a

government's lawmakers and policymaking officials, as well as customs and practices that are so

widespread as to "practically have the force of law." *Connick v. Thompson*, 536 U.S. 51, 61

(2011).  The plaintiff cannot simply allege the existence of a policy or custom without alleging

facts supporting, at least circumstantially, that such a practice exists.  *Dwares v. City of N.Y.*, 985

F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by*, *Leatherman v. Tarrant Cnty.*

*Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Critically, "a prerequisite to municipal liability under *Monell* is an underlying

constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546,

567 (S.D.N.Y. 2010).  As the Second Circuit has noted, "*Monell* does not provide a separate

cause of action for the failure by the government to train its employees; it extends liability to a

municipal organization where that organization's failure to train, or the policies or customs that it

has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459

F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no

underlying constitutional violation, its decision not to address the municipal defendants' liability

under *Monell* [is] entirely correct").

The Complaint here essentially complains of one discrete incident, during which an

officer or investigator—employed by Defendant BPD—allegedly did not act properly.  There is

no indication that Plaintiff can assert a policy or custom which would support municipal liability

based on these facts.  In addition, none of Plaintiff's allegations reflect a failure to train or

"deliberate indifference" to the rights of persons who would come into contact with Defendants.

As a result, I recommend that Plaintiff's municipal liability claim against Defendants be

dismissed.  *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at *5

(N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))

("A single incident, particularly if it involved individuals below the policy-making level is

insufficient to state a *Monell* claim."), *report and recommendation adopted by*, 2019 WL

4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

## V.   OPPORTUNITY TO AMEND

Generally, "[a] *pro se* complaint should not be dismissed without the court granting leave

to amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated."  *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal

quotation marks omitted); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave

18

when justice so requires.").  Leave to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Although I have serious doubts about whether Plaintiff can amend to assert an actionable claim and given that this is Plaintiff's initial complaint, out of an abundance of caution, I recommend that Plaintiff be permitted to amend his Complaint.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

Finally, Plaintiff is encouraged to ensure that the copy of any amended complaint provided to the Court is legible to permit a thorough review of his claims.

## VI.    PLAINTIFF'S MOTIONS TO APPOINT COUNSEL

Plaintiff has also submitted two requests for appointment of counsel.  (Dkt. Nos. 3, 7.) As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Lefridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citation omitted).  Furthermore, there is no bright-line test determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-393 (2d Cir. 1997).  Rather, the court must carefully consider a number of factors, including whether the indigent's claims seem likely to be of substance.  *See Lefridge*, 640 F.3d at 69 (stating that "[t]he court properly denies the plaintiff's motion for counsel if it concludes that his chances of success are highly dubious.") (citations omitted).

As I have recommended dismissal of the instant matter, it cannot be said that Plaintiff's claims are likely to be of substance; therefore, the motions (Dkt. Nos. 3, 7) must be denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED**;[7] and it is further

**ORDERED** that Plaintiff's motions to appoint counsel (Dkt. No. 3, 7) are **DENIED**; and it is further

---

[7]     To the extent that Plaintiff wishes to proceed with this action, he must either (i) pay the $402.00 filing fee, or (ii) submit a renewed IFP application detailing his current financial condition complete with the required inmate authorization form, within thirty (30) days from the date of the filing of Court's Decision and Order.  Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

**RECOMMENDED** that the Complaint be **DISMISSED WITH LEAVE TO AMEND**, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915, 1915A; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); FED. R. CIV. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: January  26, 2023
    Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge

---

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).